Scoeield, J.,
delivered the opinion of the court.
The claimants had a contract with the defendants, dated April 15,1879, but not approved by the Secretary of the Treasury until April 25, 1879, by which they agreed to lay up the brick and marble work for the custom-house at Memphis, the defendants agreeing to furnish the material. The work has been done and paid for at the prices speciiied in the contract.
The controversy in this suit consists of claims, on the part of the contractors, growing out of alleged failure by the defendants to furnish, at the agreed time, proper materials for the work; and of counter-claims, on the part of the defendants, for alleged overpayments.
The facts upon which each item of claims and counter-claims is based are separately stated in the findings.
It appears by Finding Illthatthe claimants lost 27 working days in the months of May, June, and July, 1879, for lack of materials, which the defendants were bound to furnish. It was necessary to retain, under pay, during this.time certain employés, in order to proceed with the work as fast as the materials arrived. In this way the claimants sustained a loss amounting to $1,111. Inasmuch as this loss was caused by the failure of the defendants to perform their part of the contract, it should, in the opinion of the court, be borne by them.
*511 Owing to the long delay in furnishing materialsthe work dragged along through several years. In the meanwhile the price of labor considerably advanced. The claimants’loss from this cause, as appears in Finding Y, amounted to $741.49. It is proper that the defendants should sustain this loss which they alone occasioned.
November 26, 1879, the claimants were notified that the work could not be resumed until about the 1st of February, 1880; and January 6, 1880, they were again notified that work could not be resumed before April; Notwithstanding these notices, .they engaged inen in Philadelphia and had them report at their office for service fór a number of days, and incurred other personal expenses preparatory to resuming the work. The facts are stated in Finding YI. This expense was entirely unnecessary. The claimants had just been notified that the work could not be resumed under two months. To employ men and put them on the pay-roll and charge for their own time and personal expenses, so long beforehand, was preposterous.
In Finding YII is a claim for tearing down and rebuilding an imperfect wall. The imperfection was caused by being-laid up in freezing weather, and was the fault of the claimants. They had been notified to resume work October 15, 1880, but did not resume until a month later, which brought the work into freezing weather. The loss should fall upon the claimants.
Finding YIII presents a small claim for screening sand. The bidders were informed beforehand that sand would be furnished unscreened. That was according to the local custom. The charge should not be allowed.
Finding IX includes three items: (1) Repairing the Government machinery 5 (2) restoring their own plant; and (3) rubbing down the walls.
The first and second items of loss were occasioned by the long delay in furnishing materials by the defendants, and they should make the contractors whole. The expense of rubbing down the walls devolved upon the claimants by the terms of the contract, and was therefore included and paid in the general settlement.
The defendants’ counter-claim consists of four items. The first, second, and third were allowed and paid by the defend *512 ants after discussion as to whether the work should be done by the claimants under the contract or should be considered extra thereto. There was no mistake of fact. The court does not feel warranted to revise the settlement thus made.
The fourth item, $200, is for extra materials furnished to rebuild a faulty wall as shown in Finding YII. The claimants’ imperfect work caused the expense and they should bear the loss.
Judgment will be entered for the claimants in the sum of $2,332.49.